ROBERT L. ANNECHARICO, COADMINISTRATOR
(ESTATE OF LISA R. ANNECHARICO), ET AL. *v.*
WILLIAM J. PATTERSON ET AL.
(15013)

Spear, Hennessy and Shea Js.

Argued December 6, 1996—officially released February 18, 1997

*Charles J. Goddard*, for the appellants (plaintiffs).

*Robert L. Trowbridge*, with whom, on the brief, was *Michael J. Rose*, for the appellees (defendants).

HENNESSY, J. The plaintiffs, Robert L. Annecharico and Barbara Writz, coadministrators of the estate of Lisa Annecharico, appeal from the judgment of the trial court in favor of the defendants, William Patterson and James Alligood, rendered after a jury trial in a wrongful death action. On appeal, the plaintiffs claim that the trial court improperly (1) barred the plaintiffs from questioning Trooper Stephen Wengloski of the Connect-

icut state police on a portion of a police report that he had prepared and from introducing that report as evidence, (2) allowed Robert Mantho to testify as an expert witness and admitted as evidence his diagram of the accident scene, (3) refused the plaintiffs' request for a missing witness jury instruction, and (4) granted the motion to strike Robert Annecharico's bystander emotional distress claim.[1]

The jury reasonably could have found the following facts. On May 19, 1986, Robert Annecharico's daughter, Lisa Annecharico (decedent), was driving on Route 6 in Windham. She was killed when her 1973 Chevrolet Vega collided head-on with a tractor trailer, operated by Patterson and owned by Alligood.

The plaintiffs brought an action against the defendants alleging negligence and bystander emotional distress.[2] The jury returned a verdict in favor of the defendants and this appeal followed.

The sole factual issue at trial was which vehicle crossed the center line. Ann Insalaco, an eyewitness, testified that she was driving directly ahead of the decedent and that she saw the tractor trailer in her side and rear view mirrors cross the center line and collide with the Vega. Insalaco further testified that she told Wengloski, the state trooper investigating the accident, that she saw the tractor trailer cross the center line. The plaintiffs then placed into evidence her signed statement, in which she stated: "It appeared to me that the truck might have cut the corner a little close, but both the blue car and truck seemed to be nearly within their respective lanes." Insalaco was given the opportunity to testify about why there was a discrepancy between her statement to the police and her in-court testimony.

[1] This claim was withdrawn at oral argument.

[2] The plaintiffs' emotional distress claim was subsequently stricken.

The plaintiffs also called Wengloski as a witness. The plaintiffs sought to question the trooper about whether Insalaco had told him after the collision that she saw the tractor trailer cross the center line. The court barred that line of questioning as inadmissible hearsay. The plaintiffs then attempted to introduce a portion of the police report that Wengloski had prepared, which stated: "Ann Insalaco stated she saw part of the accident in her rear view mirror and thought that [the defendants' vehicle] crossed the center line slightly and collided with [the decedent's vehicle]." The court excluded the evidence on the same ground.

The defendants called Robert Mantho, a former state police trooper, to testify during their case-in-chief. Mantho had participated in the investigation of the accident and had prepared a diagram of the accident scene, which became incorporated into the police report. The plaintiffs objected to Mantho's testimony because he had not been disclosed as an expert witness. The plaintiffs also objected to the introduction of the diagram because it contained Mantho's opinion as to the point of impact. The trial court overruled both objections.

The defendants did not call Anibal Jiminez, another eyewitness to the accident. According to the police report, Jiminez had stated that he saw the decedent cross the center line. The plaintiffs requested a *Secondino* instruction based on the defendants' failure to call Jiminez as a witness. The trial court denied the plaintiffs' request.

I

In the plaintiffs' first claim on appeal, they argue that the trial court should have admitted as evidence the police report that Wengloski had prepared, or allowed them to question him about the report. They assert that the evidence is not hearsay because it was not offered to prove the truth of the matter asserted. Instead, the

plaintiffs argue that the evidence was admissible because it proved Insalaco's then existing state of mind, or, in the alternative, that the statement was a verbal act. We agree with the trial court and find that the evidence was appropriately excluded as inadmissible hearsay.

"Our standard of review regarding challenges to a trial court's evidentiary rulings is that these rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice. . . . In reviewing claims that the trial court abused its discretion, great weight is given to the trial court's decision and every reasonable presumption is given in favor of its correctness. . . . We will reverse the trial court's ruling only if it could not reasonably conclude as it did. . . . *State* v. *Leonard*, 31 Conn. App. 178, 190, 623 A.2d 1052, cert. granted, 226 Conn. 912, 628 A.2d 985 (1993), appeal withdrawn January 7, 1994." (Internal quotation marks omitted.) *State* v. *Rogers*, 38 Conn. App. 777, 796, 664 A.2d 291, cert. denied, 235 Conn. 918, 665 A.2d 610 (1995).

We first address the plaintiffs' assertion that the police report should not have been excluded as hearsay because it tended to prove the witness' state of mind. "It is an elementary premise of evidentiary law that a statement made out-of-court that is offered to establish the truth of the facts contained in the statement is hearsay. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Robinson*, 213 Conn. 243, 258, 567 A.2d 1173 (1989). "An out-of-court statement is not hearsay, however, if it is offered to illustrate circumstantially the declarant's then present state of mind, rather than to prove the truth of the matter asserted." *State* v. *Blades*, 225 Conn. 609, 632, 626 A.2d 273 (1993).

We find that the statement recorded by Wengloski in his police report was offered for the truth of the

matter asserted and, therefore, it is inadmissible hearsay. The plaintiffs state that the purpose of the proffered evidence was to show that immediately after the event, Insalaco believed it was the tractor trailer that crossed the center line. The plaintiffs also submit that they offered the evidence to corroborate Insalaco's testimony at trial. The plaintiffs' stated reasons for introducing the statement show that the evidence was offered for the truth of the matter asserted and not to illustrate the witness' then present state of mind.[3]

We next address the plaintiffs' contention that the statement was not hearsay because it was a verbal act. "A verbal act is an out-of-court statement that causes certain legal consequences, or, stated differently, it is an utterance to which the law attaches duties and liabilities." C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 11.3.1, p. 321. The plaintiffs analogize the case to the situation in *Gyro Brass Mfg. Corp.* v. *United Automobile Workers*, 147 Conn. 76, 157 A.2d 241 (1959). In *Gyro Brass Mfg. Corp.*, the plaintiff sought to introduce as evidence, through testimony of its president, the content of a conversation between him and the sales manager of its supplier in which it claims the parties agreed orally to modify the terms of their sales agreement. The Supreme Court held that testimony of the contents of the utterance, offered only to prove that it was made, is not hearsay. Id., 79–80. In the present case, the plaintiffs sought to introduce evidence through Wengloski's testimony and the police report, not only to prove that Insalaco had made the prior statement to the police, but also to prove that this initial

---

[3] We note that the statement offered to demonstrate Insalaco's state of mind also could have been excluded as irrelevant. "Evidence is relevant only if it has some tendency to establish the existence of a material fact." (Internal quotation marks omitted.) *State* v. *Duntz*, 223 Conn. 207, 233, 613 A.2d 224 (1992). Here, Insalaco's state of mind does not tend to establish any material fact.

statement corroborated her testimony at trial.[4] The evidence, therefore, was not offered as a verbal act and was properly excluded as hearsay.

## II

In the second claim on appeal, the plaintiffs contend that the trial court improperly allowed Mantho to testify as an expert witness and improperly admitted as evidence a diagram of the accident scene that he had prepared for the police report. The plaintiffs argue that the trial court should not have allowed Mantho's opinion testimony because the defendants failed to disclose him as an expert witness as required by Practice Book § 220 (D). The plaintiffs further argue that Mantho's diagram depicting the point of impact of the collision was inadmissible because it contained his conclusion as to causation.

We begin by analyzing the admissibility of the diagram as a business record. "A police report may be admitted as a business entry once the court finds that the requirements of General Statutes § 52-180[5] have been satisfied. . . . For an item contained in a report to be admissible, it must be based on the entrant's own observation or on information of others whose business duty it was to transmit it to the entrant." (Citations omitted; internal quotation marks omitted.) *Mucci* v. *LeMonte*, 157 Conn. 566, 569, 254 A.2d 879 (1969). "Opinions contained in business records are admissible provided the person making the opinion would have been

---

[4] The plaintiffs had already established that Insalaco had made the prior statement to Wengloski through Insalaco's testimony at trial.

[5] General Statutes § 52-180 (a) provides in pertinent part: "Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any . . . occurrence or event, shall be admissible as evidence . . . if the trial judge finds that it was made in the regular course of any business, and that it was the regular course of the business to make the writing or record at the time of the . . . occurrence or event or within a reasonable time thereafter."

qualified to give such an opinion in oral testimony." C. Tait & J. LaPlante, supra, § 11.14.8, p. 392; see also *Mucci* v. *LeMonte*, supra, 569–70.

The plaintiffs do not contest that Mantho was qualified to render the opinion contained in the diagram of the collision or that the report met the statutory requirements for a business record. The plaintiffs' sole objection to the introduction of the diagram as a business record is based on their assertion that the depiction of the point of impact is an expression of Mantho's conclusion as to causation. We disagree and conclude that the diagram was properly admitted as a business record.

In *Turbert* v. *Mather Motors, Inc.*, 165 Conn. 422, 334 A.2d 903 (1973), our Supreme Court held that the trial court properly refused to admit the testimony or the report of a police officer that contained the officer's unsubstantiated conclusion as to what caused a two car collision. Id., 434. In the present case, Mantho's testimony as to the point of impact was based on his visit to the accident site, measurements, and his observations of "gouge marks in the pavement, the debris, and the area of the debris." In addition, Mantho testified that he considered the resting positions of the two vehicles. Because the witness was qualified to render an opinion on the point of impact and the opinion was based on his own observations of the accident scene, it was proper for the trial court to admit Mantho's testimony and the diagram as a business record. See *Lovely* v. *Caplan*, 11 Conn. App. 327, 331, 565 A.2d 1347 (1987).

The plaintiffs' argument that the defendants should have disclosed Mantho as an expert witness is also without merit. The defendants called Mantho primarily as a fact witness. A trial court has broad discretion to allow a witness to testify despite noncompliance with § 220 (D) if good cause is shown. *Knock* v. *Knock*, 224

Conn. 776, 782, 621 A.2d 267 (1993); *Berry* v. *Loiseau*, 223 Conn. 786, 800, 614 A.2d 414 (1992). "In determining whether the trial court has abused its discretion, an appellate court should entertain every reasonable presumption in favor of the trial court's decision." *Knock* v. *Knock*, supra, 783.

In this case, Mantho was identified as a witness to be called at trial and was interviewed by the plaintiffs' counsel before trial. The plaintiffs also had a copy of the police report containing Mantho's diagram. There was no showing that the plaintiffs were unduly prejudiced or surprised by the lack of disclosure. In addition, Mantho's testimony as an expert was required only for his discussion of the diagram. We conclude that the trial court properly allowed Mantho's testimony.

### III

The plaintiffs' last claim on appeal is based on the trial court's refusal to give a missing witness jury instruction under *Secondino* v. *New Haven Gas Co.*, 147 Conn. 672, 165 A.2d 598 (1960). The plaintiffs maintain that the trial court should have given this instruction because the defendants failed to call Anibal Jiminez to the stand. In the police report, Jiminez was identified as an eyewitness who stated to the police that he saw the decedent's car cross the center line. At his deposition, Jiminez again stated that the Vega crossed the center line.

According to *Secondino*, " '[t]he failure of a party to produce a witness who is within his power to produce and who would naturally have been produced by him, permits the inference that the evidence of the witness would be unfavorable to the party's cause.' " Id., 674–75, quoting *Ezzo* v. *Geremiah*, 107 Conn. 670, 677, 142 A.2d 461 (1928). "In such a situation there is a logical nexus between the failure to call the witness and an adverse inference. In other words, it makes sense to infer that the witness' testimony, had the available witness testi-

fied, would be adverse to the party who would naturally be expected to call that witness but failed to do so. . . . An inference to be drawn must be logical and reasonable and strong enough so that it can be found that it is more probable than not that the fact to be inferred is true." (Internal quotation marks omitted.) *State* v. *Santangelo*, 205 Conn. 578, 596–97, 534 A.2d 1175 (1987)

In the present case, there is no logical nexus between the defendants' failure to call Jiminez to testify and an inference that if he had testified, it would have been favorable to the plaintiffs and adverse to the defendants. On the basis of the information contained in the police report and the deposition, the trial court determined that Jiminez' testimony would have been favorable to the defendants. The plaintiffs, therefore, were not entitled to an instruction that would have allowed the jury to infer that Jiminez' testimony would have been adverse to the defendants. The trial court's refusal to provide the jury with an adverse inference instruction was not improper under the circumstances. See *State* v. *Figueroa*, 235 Conn. 145, 174–75, 665 A.2d 63 (1995); *State* v. *Lyle*, 40 Conn. App. 288, 294, 670 A.2d 871, cert. denied, 237 Conn. 903, 674 A.2d 1332 (1996).

The judgment is affirmed.

In this opinion the other judges concurred.