ALICIA K. EISENBACH ET AL. *v.*
AARON A. DOWNEY ET AL.
(AC 13517)

Dupont, C. J., and O'Connell and Heiman, Js.

Argued December 12, 1996—officially released May 13, 1997

*Peter J. Dauk*, with whom, on the brief, was *Michael C. Deakin*, for the appellants (defendants).

*Lawrence J. Merly*, with whom, on the brief, was *Joseph J. Merly*, for the appellees (plaintiffs).

*Opinion*

HEIMAN, J. In this action, sounding in negligence, the defendants appeal from the judgment of the trial court rendered on a jury verdict in favor of the plain-

tiffs.[1] On appeal, the defendants claim that the trial court improperly (1) failed to excuse a venireperson for cause, thereby violating the defendants' right to a fair and impartial jury, (2) permitted the plaintiffs to introduce into evidence medical bills and reports of medical doctors and chiropractors without laying the proper foundation to establish the requisite causal connection, (3) admitted into evidence the expert opinion of Eisenbach's and McClure's chiropractors in violation of the standard of reasonable medical probability, (4) admitted hearsay evidence as to Eisenbach's and McClure's medical diagnoses, prognoses, and the possibility of future surgeries and allowed the plaintiff Eisenbach to express a medical opinion as a lay witness, (5) permitted the plaintiffs to amend their complaint concerning allegations of recklessness, driving while intoxicated, driving without proper headlights, future surgery as to Eisenbach, and fear of future surgery as to McClure, and charged the jury on these claims without supporting evidence, (6) instructed the jury to award damages for Eisenbach's and McClure's increased susceptibility to future physical harm or injury, including anxiety regarding their future physical health, without supporting evidence, (7) instructed the jury to award damages for future lost wages and loss of earnings where there was no evidence to support such an instruction, (8) denied the defendants' motion for remittitur when the verdict was excessive as a matter of law, and

---

[1] As used in this opinion, the name Eisenbach applies only to the plaintiff Alicia Eisenbach. Earl Eisenbach, her father, was named as an additional plaintiff in the original complaint, claiming property damage to his vehicle and rental charges for the lease of a vehicle. By agreement of the parties, no separate verdict form was used for Earl Eisenbach. The jury was instructed, by agreement, that Earl Eisenbach made no claim for property damage but sought only to recover the cost of four days of car rental at an amount set forth in an exhibit and that any award to him should be included in the amount awarded to Alicia Eisenbach and not as a separate item or in a separate verdict. The third plaintiff is Jennifer McClure, who was a passenger in the vehicle operated by Alicia Eisenbach.

(9) overruled the defendants' objection to the award of interest pursuant to General Statutes § 52-192a when the plaintiffs amended their complaint and substantially changed the substantive allegations against the defendants. We are unpersuaded and affirm the judgment of the trial court.

The jury could reasonably have found the following facts. On December 23, 1988, at about 4 p.m., the plaintiff Alicia Eisenbach was operating a 1984 Dodge four door automobile on Fairfield Avenue in Bridgeport. The plaintiff Jennifer McClure was a passenger in the Eisenbach vehicle and was sitting in the front passenger seat.

The defendant Aaron A. Downey was operating a 1986 Chevrolet van owned by the defendant Michael Jackson on Martin Terrace near its intersection with Fairfield Avenue. At that intersection, the traffic on Martin Terrace must stop at a stop sign, while traffic on Fairfield Avenue does not stop. Fairfield Avenue is divided by a center esplanade with two lanes of traffic in each direction. Martin Terrace has a single lane of traffic in each direction.

Intending to cross Fairfield Avenue, Downey cut in front of the Eisenbach vehicle and the two vehicles collided. The Eisenbach vehicle had the right-of-way at the intersection. Downey was obligated to stop at the stop sign and to yield the right-of-way to vehicles that were in the intersection or approaching so closely as to constitute an immediate hazard. This he failed to do. Further, although it was dusk and drizzling, Downey failed to display proper headlights, in violation of General Statutes § 14-96 (a).[2]

---

[2] General Statutes (Rev. to 1987) § 14-96 (a), as amended by Public Acts 1987, No. 87-230, provides: "Every vehicle upon a highway within this state at any time from a half-hour after sunset to a half-hour before sunrise and at any other time when, due to insufficient light or unfavorable atmospheric conditions, including, but not limited to, periods of snow, rain or fog, persons and vehicles on the highway are not clearly discernable at a distance of

As a result of this collision, Eisenbach suffered multiple injuries including a disc herniation at L5-S1 with encroachment on both lateral recesses. She also suffered an injury to her neck and other parts of her body and incurred a permanent partial disability of 8 percent to her low back and 5 percent to her neck. She incurred substantial medical and other expenses and lost considerable time from her employment with a resultant loss of income. She will incur medical and other expenses in the future.

As a result of the collision, McClure suffered injuries to her neck, low back and left knee. She incurred a permanent disability of 5 percent to the lumbar spine and 5 percent to the neck. While she was in the acute stage following her injury, she lost use of her whole spine to the extent of 36 percent and in the chronic stage she lost use of 14 percent of her spine as a whole. She incurred substantial medical and other expenses and lost some time from her employment. She will also incur medical and other expenses in the future.

The case was submitted to the jury with interrogatories as to each plaintiff.[3] The jury returned a verdict

five hundred feet ahead shall display such lighted lamps and illuminating devices as may be required under the provisions of sections 14-96a to 14-96aa inclusive."

[3] The pertinent interrogatories and answers addressed to the Eisenbach case were: "1. Did the Plaintiff Alicia Eisenbach prove that the Defendant Aaron Downey was negligent in one or more ways as specified in the complaint? (X) Yes ( ) No"

"2. Did the Plaintiff Alicia Eisenbach prove that one or more of the proven specifications of negligence was a proximate cause of the injuries she has claimed? (X) Yes ( ) No"

"3. Did the Defendants Aaron Downey and Michael Jackson prove that the Plaintiff Alicia Eisenbach was contributorily negligent in one or more of the ways specified in the special defense? ( ) Yes (X) No"

The pertinent interrogatories and answers addressed to the McClure case were: "1. Did the Plaintiff Jennifer McClure prove that the Defendant Aaron Downey was negligent in one or more of the ways specified in the complaint? (X) Yes ( ) No"

of $219,747.29[4] in favor of Eisenbach and a verdict of $67,231.80[5] in favor of McClure. The defendants filed postverdict motions to set aside the verdicts and for remittitur. The trial court denied both motions. Eisenbach filed a motion for interest pursuant to Practice Book § 350, which was granted by the trial court. This appeal follows.

I

The defendants first assert that the trial court improperly refused to excuse James R. Platko, a venireperson, for cause, thereby violating the defendants' constitutional right to trial before an impartial jury. They also claim that the trial court's failure to excuse the venireperson for cause constituted an abuse of discretion.

Certain additional facts are necessary to an understanding of our resolution of this claim. Platko was called for voir dire examination and was questioned

---

"2. Did the Plaintiff Jennifer McClure prove that one or more of the proven specifications of negligence was a proximate cause of the injuries that she has claimed? (X) Yes ( ) No"

[4] In the Eisenbach case the verdict is as follows:

"In this case, the jury finds the issues for the Plaintiff, Alicia Eisenbach and therefore awards her the following:

a. Past economic damages: $19,747.29
b. Future economic damages: $50,000.00
c. Total economic damages: $69,747.29
a. Past noneconomic damages: $20,000.00
b. Future noneconomic damages: $130,000.00
c. Total noneconomic damages: $150,000.00
Total $219,747.29"

[5] The verdict in the McClure case is as follows:

"In this case the jury finds the issues for the Plaintiff, Jennifer McClure and therefore awards her the following:

a. Past economic damages: $9,231.80
b. Future economic damages: $23,000.00
c. Total economic damages: $32,231.80
a. Past noneconomic damages: $10,000.00
b. Future noneconomic damages: $25,000.00
c. Total noneconomic damages: $35,000.00
Total: $67,231.80"

first by the defendants, then by the plaintiffs. In the course of the plaintiffs' voir dire, statements were elicited that indicated that the venireperson was familiar with Robert Russo, Jr., a radiologist, who was to be a witness on behalf of one of the plaintiffs. Examination by the plaintiffs revealed that Platko's wife had seen Russo for a mammogram five or six years prior to the trial, and that Platko had cleaned house for Russo when Platko had been operating a house cleaning service. Platko explained that when he worked for Russo he seldom saw him. Platko stated that the fact that he knew Russo would not cause him to believe or disbelieve Russo more than any one else and that it would not cause a problem for him to judge Russo's credibility.

After the venireperson left the courtroom, the defendants addressed the trial court concerning Platko.[6] The

---

[6] The discussion between the defendants and the court was as follows:

"[Defendants' Counsel]: Your Honor, I was going to ask for permission to reinquire. [Plaintiffs' Counsel] touched on the subject at the end, because I realized I had written a note about it, and I never got into it. I was going to ask about Dr. Russo. I don't know if his personal—you know the answers came out, and he may have rehabilitated himself, but I don't know if his personal relationship with Dr. Russo would have a bearing on his decision as a juror. I never asked for a chance to reinquire. I thought the questions were adequately and properly presented by [Plaintiffs' Counsel], but I was going to ask for permission to reinquire. That concerns me a little bit. I might be an idealist, but I always like to have a jury with an absolute clean slate, so I would feel a little—

"The Court: I just thought—I mean, I'm not denying it yet, but I thought he was pretty clear that he hadn't any contact with him for the last seven or eight years, that his wife once went to him, and for whatever reason, didn't anymore, and that he hadn't cleaned—

"[Defendants' Counsel]: I know, and I have the same feeling, but again, like I say, I just would like to have an absolute clean slate on every juror, if possible, so I'm just going to make my statement before the court, that I think I would like to be on record to have him excused on that basis.

"The Court: Well, do you—

"[Defendants' Counsel]: Even in view of his responses.

"The Court: Okay. Well, do you want to reinquire? What are you asking the court to do?

"[Defendants' Counsel]: Well, just on the basis of the fact that he's worked for him personally. I think his wife worked for—I've forgotten what he said.

defendants moved that Platko be excused for cause. The trial court denied this motion and, as the defendants had exhausted their peremptory challenges, Platko was accepted by the plaintiffs and became a member of the jury.

The defendants first argue that in declining to excuse Platko for cause, the trial court violated the defendants' constitutional right to a trial before an impartial jury.

The Connecticut constitution provides that " '[i]n civil and criminal actions tried by a jury, the parties shall have the right to challenge jurors peremptorily . . . .' Conn. Const., art. I § 19, as amended by art. IV . . . . This constitutional enactment reflects the abiding belief of our citizenry that an impartial and fairly chosen jury is the cornerstone of our criminal justice system." *State* v. *Hancich,* 200 Conn. 615, 625, 513 A.2d 638 (1986).

A trial court's refusal to remove a juror for cause is reversible error only if the party has exhausted all of his or her peremptory challenges and "an additional challenge is sought and denied." *State* v. *Esposito,* 223 Conn. 299, 310–11, 613 A.2d 242 (1992). Here, the defendants had exhausted all of their peremptory chal-

---

"The Court: No. His wife went—evidently, Dr. Russo is a radiologist. His wife—this venireperson's wife went some years ago, evidently for a mammogram, and that was that, so he doesn't seem to know anything about him one way or the other that way, and he once cleaned the house of Dr. Russo, and Dr. Russo's ex-wife, so I don't know which way that cuts, but he evidently does not do that, and has not for many years, since he is no longer employed in the cleaning business.

"[Defendants' Counsel]: Well, I would, just for the record, like to make my statement for cause.

"The Court: All right. And he thought it wouldn't—he didn't seem to have any particular notion one way or the other about Dr. Russo as a witness, as a, you know, professional person, so I don't think that—

"[Defendants' Counsel]: All right. May an exception be noted, Your Honor?
"The Court: It may. You may have an exception.
"[Plaintiffs' Counsel]: Accepted, Your Honor.
"The Court: Okay. Ask him to come back."

lenges at the time that they moved to excuse Platko for cause, but they failed to request an additional peremptory challenge with which to remove Platko. On the basis of the holding in *Esposito*, we conclude that the trial court's refusal to remove Platko for cause did not constitute reversible error.

The defendants did not request the trial court's permission to reinquire of Platko. They started by saying that they had intended to do so, but, in response to a direct inquiry from the trial court, failed to make such a request. In fact, the defendants responded that they simply wanted to make "a statement for cause." The trial court, therefore, did not address the claim now before us because the defendants failed to request that they be permitted to conduct a further inquiry of Platko. We will not usurp the prerogative of the trial court by reviewing this claim. See *Baker* v. *Cordisco*, 37 Conn. App. 515, 526, 657 A.2d 230, cert. denied, 234 Conn. 907, 659 A.2d 1207 (1995).

The defendants further assert that "[i]t is reversible error to deny a motion to excuse 'for cause' when the appellant shows that a purportedly biased or unsuitable juror actually sat on the final jury which rendered the unfavorable result." Although not raised as clearly before the trial court as is preferred, this claim appears to have been at least colorably raised and ruled on.

The trial court's determination as to the competency of a juror to serve in the trial of a case is within its broad discretion. See *State* v. *Cubano*, 203 Conn. 81, 88–89, 523 A.2d 495 (1987). In challenging the competency of a juror to sit on the panel, the defendants bear the burden of raising a claim of actual bias from speculation to fact. To satisfy that burden of proving actual bias, the party challenging for cause must show that the juror's state of mind and opinion were fixed.

See *Johnson* v. *New Britain General Hospital*, 203 Conn. 570, 582, 525 A.2d 1319 (1987).

A review of Platko's answers to questions addressed to him on the voir dire fails to establish any bias or prejudice on his part. Platko explained that he had cleaned Russo's house years previous but had little personal contact with him, and that his wife had consulted Russo for a mammogram but had not seen him for a number of years. Further, Platko stated that his past association with Russo would not cause him to believe or disbelieve him, and that these facts would cause him no difficulty in weighing Russo's credibility.

On the basis of our review of the record, we conclude that the trial court did not abuse its discretion in denying the defendants' motion that Platko be excused for cause because the defendants failed to meet their burden of establishing the existence of an actual bias or prejudice on the part of Platko toward the witness Russo. The defendants' claim is without merit.

II

The defendants next assert that the trial court improperly admitted into evidence medical reports and bills from medical doctors and chiropractors without the proper foundation to establish the requisite causal connection. We are not persuaded.

The defendants assert that there was evidence that Eisenbach and McClure had received injuries on prior occasions, and that the reports and bills "did not consider, and therefore could not eliminate as a cause, the prior injuries."[7] Thus, they posit that the reports and bills were not admissible in evidence.

---

[7] The record reflects that with the exception of Daniel Nijensohn, a neurosurgeon whose trial participation was limited to the introduction of his reports and bills, all other health care professionals whose reports and bills are attacked by the defendants testified in person and testified as to their opinion of the causal relationship between the accident and the plaintiffs' injuries.

General Statutes § 52-174 (b)[8] "permits a signed [physician's or chiropractor's] report [and bill] to be admitted as a business entry. The business records statute, General Statutes § 52-180, allows the admission of any writing as evidence of the act or event it describes provided the record was made in the regular course of business and that it was the regular course of business to make such a writing within a reasonable time after the occurrence of the event in question. Section 52-174 (b) creates a presumption that the doctor's signature is genuine and that the report [and bill were] made in the ordinary course of business. . . . Thus, once the statutory requirement that the report [and bill] be signed by a treating physician is met, the evidence in that report [and bill] is admissible . . . . Information that is relevant to the treatment of the patient . . . is admissible." (Citations omitted.) *Aspiazu* v. *Orgera*, 205 Conn. 623, 626–28, 535 A.2d 338 (1987).

"Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . [E]vidence need not exclude all other possibilities [to be relevant]; it is sufficient if it tends to support the conclusion [for which it is offered], even to a slight degree. . . . [T]he fact that evidence is susceptible of different explanations or would support various inferences does not affect its admissibility, although it obviously bears upon its weight. So long as the evidence may reasonably be construed in such a manner that

---

[8] General Statutes § 52-174 (b) provides in relevant part: "In all actions for the recovery of damages for personal injuries or death . . . any party offering in evidence a signed report and bill for treatment of any treating physician, dentist, chiropractor, osteopath, natureopath, physical therapist, podiatrist, psychologist, emergency medical technician or optometrist may have the report and bill admitted into evidence as a business entry and it shall be presumed that the signature on the report is that of the treating physician, dentist, chiropractor, osteopath, natureopath, physical therapist, podiatrist, psychologist, emergency medical technician or optometrist and that the report and bill were made in the ordinary course of business. . . ."

it would be relevant, it is admissible. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Evans*, 44 Conn. App. 307, 314, 689 A.2d 494 (1997). "The trial court has broad discretion in determining the relevancy of evidence. . . . Its ruling will only be overturned if there is an abuse of discretion." *Aspiazu* v. *Orgera*, supra, 205 Conn. 634.

Here, the medical reports and bills were signed by the treating physicians, and thus fell under § 52-174 (b). Moreover, regarding the medical reports and bills at issue, either the treating physician specifically stated that the injuries resulted from the 1988 car accident, or it is evident that the physician believed the injuries to be the result of that car accident. "The causal relation between an injury and its later physical effects may be established by the direct opinion of a physician . . . ." *Boland* v. *Vanderbilt*, 140 Conn. 520, 525, 102 A.2d 362 (1953). In addition, we have previously held that a treating physician's belief that the injuries are the result of a specific accident also establishes a sufficient causal connection to render his medical reports and bills relevant. See *Wilson* v. *R.F.K. Corp.*, 19 Conn. App. 548, 551, 563 A.2d 738 (1989). Concerns regarding the reporting physicians' knowledge of prior injuries goes to the weight given the reports, not their admissibility.

We conclude, therefore, that the trial court did not abuse its discretion in determining that the medical reports and corresponding bills were relevant and admissible.

III

The defendants next assert that the trial court improperly admitted into evidence Eisenbach's and McClure's treating chiropractors' expert opinions in violation of the Connecticut standard of "reasonable medical certainty." Specifically, the defendants argue that the reports and expert testimony of the treating chiro-

practors, Donald Lawlor, Nicholas Bogannam and Michael Showah, should have been excluded because chiropractors are not medical doctors and thus cannot testify as to medical opinions or "meet the time-honored standard of reasonable medical probability." We disagree.

"The trial court has wide discretion in ruling on the qualification of expert witnesses and the admissibility of their opinions. . . . The court's decision is not to be disturbed unless [its] discretion has been abused, or the error is clear and involves a misconception of the law. . . . Generally, expert testimony is admissible if (1) the witness has a special skill or knowledge directly applicable to a matter in issue, (2) that skill or knowledge is not common to the average person, and (3) the testimony would be helpful to the court or jury in considering the issues." (Citations omitted; internal quotation marks omitted.) *State* v. *Kemp,* 199 Conn. 473, 476, 507 A.2d 1387 (1986).

Our legislature and Supreme Court have determined that chiropractors are competent to testify as expert medical witnesses within their area of expertise. See General Statutes § 52-149a;[9] see also General Statutes § 52-174 (c);[10] *Struckman* v. *Burns,* 205 Conn. 542, 553–55, 534 A.2d 888 (1987); *Miller* v. *Drouin,* 183 Conn. 189, 193 n.3, 438 A.2d 863 (1981). Thus, a chiropractor's expert opinion, as long as it is based on reasonable

[9] General Statutes § 52-149a provides in relevant part: "(a) The deposition of any physician, psychologist, chiropractor, natureopathic physician, osteopathic physician or dentist licensed under the provisions of the general statutes, may be taken on behalf of either party to any civil action . . . in which the physician, psychologist, chiropractor, natureopathic physician, osteopathic physician or dentist may be called as an expert witness . . . ."

[10] General Statutes § 52-174 (c) provides: "This section shall not be construed as prohibiting either party or the court from calling the treating physician, dentist, chiropractor, osteopath, natureopath, physical therapist, podiatrist, psychologist, emergency medical technician or optometrist as a witness."

probabilities rather than mere speculation or conjecture, will satisfy the requisite standard of reasonable medical probability. See *Struckman* v. *Burns*, supra, 553–56. We conclude, therefore, that the trial court did not abuse its discretion by admitting the reports and expert testimony of the treating chiropractors.

## IV

The defendants next assert that "the trial court improperly admitted hearsay evidence concerning [Eisenbach's] medical diagnosis, prognosis and possibility of future surgery and improperly allowed Eisenbach to express medical opinions as a lay-witness." We disagree.

Certain additional facts are necessary to an understanding of our resolution of this claim. Eisenbach's chiropractor, Lawlor, testified at trial that Ahmed Currim, a physician, called Lawlor and asked that he see Eisenbach, explaining to Lawlor that Eisenbach had a herniated disc. Later, Lawlor testified that in making his diagnosis, he relied on Eisenbach's statement that Daniel Nijensohn, a neurosurgeon, had told her that she needed surgery. Defense counsel objected to both of the statements repeated by Lawlor on the ground that they constituted inadmissible hearsay. The trial court overruled both of the hearsay objections. Immediately following the overruling of each objection, the trial court gave the jurors a cautionary instruction that they were to consider the statements repeated by Lawlor only as something that Lawlor relied on in making his medical diagnosis, not for the truth of the matters contained in the statements.

Eisenbach testified that she had considered future back surgery, but felt it would be too great a risk and might not alleviate all of her pain. Eisenbach further testified that she was concerned about her future health. She was concerned that she might need surgery,

that she might need continual medical treatment, and that her low back problems might hinder future pregnancies. Defense counsel objected to each part of this testimony, and argued that the lay witness was testifying to medical opinions. The trial court overruled the objections and gave the jury a curative instruction explaining that they were to consider this testimony only to illustrate Eisenbach's present state of mind, not as expert medical evidence.

"Our standard of review regarding challenges to a trial court's evidentiary rulings is that these rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice. . . . In reviewing claims that the trial court abused its discretion, great weight is given to the trial court's decision and every reasonable presumption is given in favor of its correctness. . . . We will reverse the trial court's ruling only if it could not reasonably conclude as it did." (Internal quotation marks omitted.) *Annecharico* v. *Patterson*, 44 Conn. App. 271, 275, 688 A.2d 1341 (1997).

The defendants' assert that the trial court improperly admitted Lawlor's testimony that he relied on Currim's report that Eisenbach had a herniated disk. "[T]he ruling by the trial court in issue is consistent with the accepted principle that an expert's testimony may be based on reports of others if the reports are those customarily relied on by such an expert in formulating an opinion." *State* v. *Cosgrove*, 181 Conn. 562, 584, 436 A.2d 33 (1980). We conclude, therefore, that the trial court did not abuse its discretion by admitting Lawlor's testimony, especially when the evidentiary ruling was immediately followed by a clear and concise cautionary instruction to the jury. See *State* v. *Jones*, 44 Conn. App. 338, 349–50, 689 A.2d 517 (1997).

We next conclude that the trial court did not abuse its discretion in ruling that Eisenbach's statement about

Nijensohn's surgical recommendation was offered solely to show its effect on Lawlor's subsequent diagnosis and treatment, and thus was not hearsay. "It is an elementary premise of evidentiary law that a statement made out-of-court that is offered to establish the truth of the facts contained in the statement is hearsay." (Internal quotation marks omitted.) *Annecharico* v. *Patterson*, supra, 44 Conn. App. 275. However, "[a] statement offered solely to show its effect upon the hearer is not hearsay."(Internal quotation marks omitted.) *State* v. *Cruz*, 212 Conn. 351, 356, 562 A.2d 1071 (1989). Moreover, any potential prejudice to the defendants resulting from the introduction of the testimony was completely dissipated by the trial court's prompt delivery of a curative instruction to the jury, which clearly explained that the jury was to consider the testimony only for its effect on Lawlor, not for its truth. See *State* v. *Jones*, supra, 44 Conn. App. 349–50; *State* v. *Lasky*, 43 Conn. App. 619, 636, 685 A.2d 336 (1996), cert. denied, 239 Conn. 959, 688 A.2d 328 (1997). "In the absence of a clear indication to the contrary, [jurors] are presumed to follow the instructions that they are given." *State* v. *Guess*, 39 Conn. App. 224, 235, 665 A.2d 126, cert. denied, 235 Conn. 924, 666 A.2d 1187 (1995).

Finally, we conclude that the trial court did not abuse its discretion when it determined that Eisenbach's testimony regarding her fears of future surgery, continual treatment, and potential problems with future pregnancies was admissible nonhearsay offered to prove Eisenbach's state of mind, not a lay person's medical opinion. It is well established that "[a]n out-of-court statement is not hearsay . . . if it is offered to illustrate circumstantially the declarant's then present state of mind, rather than to prove the truth of the matter asserted." *Annecharico* v. *Patterson*, supra, 44 Conn. App. 275. Moreover, the court's evidentiary ruling was immediately followed by a clear and concise cautionary instruc-

tion to the jury and jurors are presumed to follow the instructions that they are given. See *State* v. *Jones*, supra, 44 Conn. App. 349–50; *State* v. *Guess*, supra, 39 Conn. App. 235.

V

The defendants further claim that the trial court improperly permitted the untimely amendment of the plaintiffs' complaint to include allegations of recklessness, driving while intoxicated, violation of the headlight statute, future surgery as to Eisenbach, and fear of future surgery as to McClure. The defendants argue that this untimely amendment prejudiced them because they had prepared their case in reliance on the original complaint.

"The grant or denial of a motion to amend the pleadings is a matter within the discretion of the trial court. . . . In the interest of justice courts are liberal in permitting amendments; unless there is . . . an abuse of discretion. . . . The trial court is in the best position to assess the burden which an amendment would impose on the opposing party in light of the facts of the particular case. The essential tests are whether the ruling of the court will work an injustice to either the plaintiff or the defendant and whether the granting of the motion will unduly delay a trial." (Citations omitted; internal quotation marks omitted.) *Wassell* v. *Hamblin*, 196 Conn. 463, 466–67, 493 A.2d 870 (1985).

At trial, the plaintiffs offered evidence of Downey's intoxication, recklessness and operation of a motor vehicle without proper headlights. The plaintiffs also offered evidence as to Eisenbach's need for future surgery and McClure's fear of future surgery. The defendants did not object to the introduction of any of this evidence on the ground that the evidence was beyond the scope of the pleadings. Near the end of the trial, the plaintiffs moved to amend their complaint to con-

form the pleadings to the proof. The trial court allowed the amendments.

We conclude that the trial court did not abuse its discretion in allowing these amendments. "A party is permitted to amend the pleadings to conform with the proof offered. Practice Book § 178 . . . ." *All American Pools, Inc.* v. *Lato,* 20 Conn. App. 625, 630, 569 A.2d 562 (1990). Moreover, any claim of prejudice was mitigated by the defendants' failure to object to the evidence when it was introduced at trial. See *Tedesco* v. *Stamford,* 215 Conn. 450, 462–63, 576 A.2d 1273 (1990), on remand, 24 Conn. App. 377, 588 A.2d 656 (1991), rev'd on other grounds, 222 Conn. 233, 610 A.2d 574 (1992). Furthermore, at the time the trial court permitted the plaintiffs to amend their complaint, the defendants did not argue untimeliness, they did not request a continuance, nor did they make any claim of prejudice. See *Wassell* v. *Hamblin,* supra, 196 Conn. 466–67.

## VI

The defendants next claim that the trial court improperly charged the jury on the issues of recklessness, operating a motor vehicle while under the influence of intoxicating liquor, the headlight statute, increased susceptibility to future physical harm or injury, anxiety regarding future physical health, and future lost wages, when there was insufficient evidence at trial to support such instructions. We disagree.

It is well established that a trial court should instruct a jury on an issue "for which there is any foundation in the evidence, even if weak or incredible. . . . In determining whether any such foundation exists, [w]e must consider the evidence presented at trial in the light most favorable to supporting the [trial court's jury instruction.]" (Citations omitted; internal quotation marks omitted.) *State* v. *Richardson,* 40 Conn. App.

526, 530, 671 A.2d 840, cert. denied, 237 Conn. 905, 674 A.2d 1333, cert. denied, 237 Conn. 910, 675 A.2d 457, cert. denied, 519 U.S. 902, 117 S. Ct. 257, 136 L. Ed. 2d 183 (1996).

Eisenbach testified that the defendant drove at a high rate of speed through a stop sign in a reckless manner. Both Eisenbach's mother, who arrived at the scene of the accident shortly after the collision, and McClure testified that Downey seemed to be intoxicated as they observed him at the scene of the accident. Downey testified that his headlights were not on at the time of the accident, while the plaintiffs testified, in accordance with the police accident report, that the accident occurred at dusk on a rainy evening.

Lawlor and Showah opined at trial that Eisenbach and McClure would most likely experience recurring muscle spasms, pain and disability for at least the next ten years. Lawlor and Showah testified that Eisenbach's and McClure's neck and back injuries would render them susceptible to future injuries and arthritis. Further, both Eisenbach and McClure testified as to their anxiety regarding their future physical health, including fears of arthritis and of low back injuries hindering pregnancy and childbirth.

In its charge to the jury, the court defined lost wages as "time away from one's work due to sickness or doctor or therapy appointments and the like that may cause one to lose some earnings . . . ." Lawlor and Showah testified that both Eisenbach and McClure have permanent injuries from the accident that will most likely result in future pain, discomfort and disability, as well as require future treatment and therapy.

"We do not evaluate the credibility of these witnesses, but instead examine whether there was *any* evidence to support [these instructions] . . . . We leave the function of gauging credibility and weighing evidence to

the jury." (Emphasis in original.) *State* v. *Richardson,* supra, 40 Conn. App. 531. We conclude that there was sufficient evidence presented at trial to support the trial court's jury instructions.

## VII

The defendants further claim that the trial court improperly denied their motion for remittitur when the verdict[11] was excessive as a matter of law. We are unpersuaded.

"In ruling on the motion for remittitur, the trial court was obliged to view the evidence in the light most favorable to the plaintiff in determining whether the verdict returned was reasonably supported thereby. . . . The size of the verdict alone does not determine whether it is excessive. The only practical test to apply to this verdict is whether the award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury was influenced by partiality, prejudice, mistake or corruption. . . . Every reasonable presumption in favor of the correctness of the court's refusal to set aside the verdict as excessive should be indulged and its ruling will not be disturbed unless there is a clear abuse of discretion. . . ." (Internal quotation marks omitted.) *Goral* v. *Kenney,* 26 Conn. App. 231, 240–41, 600 A.2d 1031 (1991).

The jury could have reasonably found that Eisenbach suffered permanent injuries to her back and neck. At the time of trial, she had incurred $15,012.54 in medical expenses and a loss of earnings of $19,747.29. She had a life expectancy of 51.2 years, and could expect to incur future medical expenses of approximately $1500 a year and to sustain future pain and suffering. She has trouble sleeping and can no longer play volleyball or

[11] See footnotes 4 and 5.

softball, vacuum, mop, clean, dance, jog or carry heavy bags.

Further, the jury could have reasonably found that McClure suffered permanent injuries to her back and neck. At the time of trial she had incurred medical expenses of approximately $9058.20 and lost earnings of about $173.60. She had a life expectancy of 49.3 years, and could expect to incur future medical expenses of approximately $1500 and to sustain much future pain and discomfort. She has difficulty carrying a purse or a briefcase. Traveling has become painful and difficult. She can no longer water ski, snow ski, roller skate, jog, bicycle, dance, ride horses, engage in aerobics or play racquetball.

Our review of the record convinces us that the amount of damages awarded by the jury falls within the necessarily uncertain limits of fair and just damages. While the award may have been generous, it does not shock the conscience. See *Goral* v. *Kenney*, supra, 26 Conn. App. 241. We conclude, therefore, that the trial court did not abuse its discretion in denying the motion for remittitur.

## VIII

Finally, the defendants claim that the trial court improperly awarded offer of judgment interest under General Statutes § 52-192a.[12] Specifically, the defend-

---

[12] General Statutes (Rev. to 1989) § 52-192a provides in pertinent part: "(a) After commencement of any civil action based upon contract or for the recovery of money only, the plaintiff may before trial file with the clerk of the court a written 'offer of judgment' signed by him or his attorney, directed to the defendant or his attorney, offering to settle the claim underlying the action and to stipulate to a judgment for a sum certain. The plaintiff shall give notice of the offer of settlement to the defendant's attorney, or if the defendant is not represented by an attorney, to the defendant himself. . . .

"(b) After trial the court shall examine the record to determine whether the plaintiff made an 'offer of judgment' which the defendant failed to accept. If the court ascertains from the record that the plaintiff has recovered an

ants argue that the plaintiffs amended their complaint to include new allegations of recklessness, operating a motor vehicle while under the influence of intoxicating liquor and violation of the headlight statute, thereby altering "the conduct underlying the complaint" and rendering the original offer of judgment moot. We disagree.

This issue is governed by *Blakeslee Arpaia Chapman, Inc.* v. *El Constructors, Inc.*, 239 Conn. 708, 749–51, 687 A.2d 506 (1997). In *Blakeslee*, after the offer of judgment was filed, the plaintiff amended its complaint to include a new allegation that altered the conduct underlying the complaint. In the original complaint, the plaintiff sought to recover ongoing costs under a sub-contract for the rental of steel. The amended complaint alleged a new breach of the subcontract and thus sought to recover the steel's liquidation value. Our Supreme Court emphasized that the amendment was "not based on the method of compensation sought for the steel, but, rather, on the breach of the subcontract." Id., 751. In determining that the plaintiff's amendment seeking liquidation costs for the new breach of subcontract did not invalidate the offer of judgment, our Supreme Court explained that, "[a]n offer of judgment is an offer to settle the entire case, including claims both known and unknown, and both certain and uncertain." (Internal quotations marks omitted.) Id., 750.

On the basis of *Blakeslee*, we conclude that the trial court properly awarded offer of judgment interest under General Statutes § 52-192a, and the defendants' claim is without merit.

The judgment is affirmed.

In this opinion the other judges concurred.

amount equal to or greater than the sum certain stated in his 'offer of judgment', the court shall add to the amount so recovered twelve per cent annual interest on said amount . . . ."