[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On October 31, 1998, at about 12:29 a.m., the plaintiff, who was 55 years old at the time of the hearing in damages held in the above-captioned matter, was operating a motor vehicle which was leased from and owned by Mazda American Credit, in a southerly direction on West Road (Route 83) in the town of Ellington near the entrance to 105 West Road, where Cioppino's Restaurant and Pub was located. During the evening of October 30, 1998, and until the early morning hours of the following day, the defendant was drinking alcoholic beverages at that establishment, and was in an intoxicated condition at the time that he drove his vehicle out of the parking lot intending to head north on West Road, when he crossed the center line of the highway in a no-passing zone and entered the southbound lane, thereby causing a violent head-on collision with the plaintiff's vehicle, which was totally destroyed by the resulting impact.
The defendant filed a pro se appearance on January 11, 2000, but he was defaulted for failure to plead on May 18, 2000, and was not present at the hearing in damages. The plaintiff, through counsel, submitted her medical and hospital bills and records, the reports and office notes of her treating physicians, and the plaintiff herself testified as to her lost wages, diminished earning capacity, future medical expenses, as well CT Page 296 as her nonpecuniary losses, including her physical pain and suffering, permanent partial disability and her mental and emotional suffering and distress.
The complaint states that because of the collision, the plaintiff "was jolted around the interior of her vehicle [and as a result she] suffered a severe strain and sprain of her cervical, thoracic, and lumbar spine [and] suffered several fractured ribs and a punctured lung." It further states that she has suffered and will continue to suffer great pain and mental anguish, that some of her injuries are likely to be permanent, and that she has been, and will continue to be, unable to perform the duties and activities of her employment, as well as social and other activities as she did before the collision.
The Lifestar air ambulance report states that she had to be extricated from her demolished vehicle, that she lost consciousness for a time at the scene, and was transported to Hartford Hospital where x-rays were taken that revealed several fractured ribs and a punctured lung. The plaintiff was hospitalized for seven days, and she was subsequently examined by Doctor Bruce Sobin whose notes state that she "was fine" before the motor vehicle accident, that she sustained severe fractures of three ribs on the left side and punctured lungs as a result, and that the persistent and chronic neck and upper back pain that she suffered from thereafter appeared to be permanent in nature.
In October of 1999, the plaintiff was seen by Doctor Charles Kline, an orthopedic physician, who stated that her neck and arm pain were related to the motor vehicle accident of October 31, 1998, and who referred her for an MRI of her cervical spine. After his review of the MRI, he found that the plaintiff had reached maximum medical improvement and that she had a permanent partial disability of six percent, and that it was medically probable that she would have to undergo an anterior cervical discectomy and fusion of CS and C6, which even if successfully completed, would result in a disability rating in the range of twelve to fifteen percent of the cervical spine.
At the time of the accident she was working full-time as a rehabilitation aide at the Woodlake convalescent facility in Tolland, and an essential requirement of her employment was the lifting and transferring of bedridden patients, which she could no longer perform because Dr. Kime had given her a twenty-five pound weight lifting restriction as a result of the injury to her cervical spine. She was also unable to work at her part-time job as a waitress at a local restaurant for a period of six weeks.
The plaintiff testified at the hearing and stated that although she CT Page 297 thoroughly enjoyed her work as a rehabilitation aide, she felt that she would endanger her patients and hurt herself if she were to attempt to go back into the health care field because of her inability to do the lifting required for the proper performance of the duties of her former employment. She also stated that Doctor Kime had advised her that she would not be able to return to the type of health care work that she had been doing for so many years at Woodlake, where she was making about $20,000 a year at the time of her injury, and that it had been her intention to work well beyond the age of sixty-five if she were able to do so.
She also testified that she no longer had the strength to lift as she did before, and because of the persistent pain that she continued to have at the time of the hearing, which was almost three years after she sustained her injuries, she had to take a total of twelve hundred milligrams of ibuprofen four times every day for pain. She also stated that she had lost six weeks from her part-time work as a waitress at Casey's restaurant in Ellington as a result of the collision and that her lost wages totaled $1,218.75.
She confirmed the fact that Doctor Kime had discussed treatment options with her on December 22, 1999, and that after he had informed her of all of the normal risks of spinal surgery, he stated that if she decided to undergo the operation, "I could have more disability than I have now [and that] I could be paralyzed." In the course of that visit, he also said that if she were to choose surgical intervention, he would be concerned that the levels above and below C5 and C6 might also be herniated.
Although neither the medical reports or office notes of her visits that were offered into evidence indicated the costs of the surgery or the time it would take for her to recover, it was the plaintiff's recollection that Doctor Kime estimated the cost of the surgery to be $45,000 and that she would not be able to work for about three months thereafter. She also confirmed the fact that up to the date of the hearing she had incurred medical and hospital bills that totaled $17,285.28.
In the posthearing memorandum submitted by counsel for the plaintiff, he states that his client "has decided to attempt to live with her present restrictions rather than run the risks pointed out by Doctor Kime." He also states that "[u]nfortunately, as a result of this decision she is no longer able to work in the healthcare field which is the only field she is trained in and has worked in most of her adult life [and furthermore she] has no present insurance benefits which would pay the costs of such surgery [because although] she had medical benefits at her job at Wood Lake . . .", the local restaurant in which she resumed working on a part-time basis as a waitress does not provide health CT Page 298 insurance benefits to its employees.
The plaintiff claims that the cost of future surgery that she testified was given to her by Doctor Kime, but was not included in any of his reports, should be awarded to her as part of her economic damages. The court has no reason to doubt her credibility in that respect, despite the fact that if this had been a contested matter, her testimony would have been objected to as hearsay and would have been admitted only for the limited purpose of showing her state of mind, including her concern about the risks of surgery and her reasonable fears that her disability would increase as a result of surgical intervention. Eisenbach v. Downey,45 Conn. App. 165, 178-80 (1997).
A plaintiff in any tort action "who has established a breach of duty that was a substantial factor in causing a present injury which has resulted in an increased risk of future harm is entitled to compensation to the extent that the future harm is likely to occur." Petriello v.Kalman, 215 Conn. 377, 397-98 (1990). In such a case, the "plaintiff may recover for the fear of future medical treatment and disability, as distinguished from a recovery for the future disability itself; even ifthere is only a possibility that such future treatment or disability willtake place." (Emphasis added.) Goodmaster v. Houser, 225 Conn. 637, 645
(1993).
The court, having reviewed the evidence presented at the hearing in damages as summarized herein, awards the following damages to the plaintiff, Rose M. McMann, as fair, just and reasonable compensation for the injuries she sustained as the result of the negligent operation by the defendant, Michael W. Burr, of his vehicle causing the head-on collision with her vehicle on October 31, 1998:
 ECONOMIC DAMAGES
Hospital and medical bills to date $17,285.28 Lost wages (part-time job) 1,218.75 Lost wages (Woodlake) 10/31/98 to 8/30/01 @ $500 per week 68,000.00 Lost earnings for ten years until age 65 240,000.00
Total economic damages $326,504.03
The court also finds that the plaintiff's life expectancy is 27.2 years and that her past and future noneconomic damages justify compensation for her past and future nonpecuniary losses, including physical pain and suffering as well as mental and emotional distress, and in particular, her well founded anxiety and fear concerning her possible surgery and its unpredictable risks of increased disability in the future. The amount of CT Page 299 fair and just compensation for this component of her damages is found to be $150,000.
Accordingly, judgment is entered in favor of the plaintiff, Rose M. McCann, against the defendant, Michael W. Burr, in the amount of $476,504.03.
Hammer Judge Trial Referee