[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case comes before the court on the plaintiff's application to enjoin an arbitration of a dispute arising from the renovation of a home on the ground that the contract providing for arbitration is unenforceable.
Whether a particular dispute is arbitrable is a question for the court unless, by appropriate language, the parties have agreed to arbitrate that issue. John A. Errichetti Associates v. Boutin,183 Conn. 481, 488 (1981); Connecticut Union of Telephone Workers,Inc. v. Southern New England Telephone Co., 148 Conn. 192, 198
(1961). Where the scope of the agreement to arbitrate is at issue, arbitration should occur unless it may be said with "positive assurance" that the arbitration claim is not susceptible of an interpretation that covers the dispute. John A. ErrichettiAssociates Boutin, 183 Conn. 489; Board of Education v. Frey,174 Conn. 578, 582 (1978). Where, however, the issue is whether there is an enforceable agreement to arbitrate at all, the court must determine that issue (except in certain circumstances not claimed to be present here.) Success Centers, Inc. v. Huntington LearningCT Page 4617Center, Inc., 223 Conn. 761, 768-67; (1972) Total Property Servicesof New England, Inc. v. Q.S.C.V., Inc., 30 Conn. App. 580, 586-87
(1993).
Where, for example, a party resisted arbitration on the ground that the statute of limitation had expired on the claim to be arbitrated, the Supreme Court held that the enforceability of an agreement to arbitrate the claim was a threshold issue for the court. Wynn v. Metropolitan Property and Casualty Insurance Co.,228 Conn. 436 (1994). Though the court in Wynn cited the statutory requirement of arbitration imposed by General Statutes § 38a-33b(c), the insurance policy at issue in that case provided for contractual arbitration Wynn v. Metropolitan Property and Casually Ins., Co.,30 Conn. App. 803, 805 (1993).
The court, Booth, J., has previously determined that the arbitration claim at issue does not require the issue of arbitrability to be decided by arbitration and this court agrees with that conclusion based on the foregoing analysis. [14 Conn. L. Rptr. No. 6, 188 (June 26, 1995).]
The plaintiff claims that although there is in existence a contract that provides for arbitration of disputes, she cannot be required to arbitrate because no portion of the contract, including the arbitration provision, is enforceable for the reason that the contract fails to comply with the Home Improvement Act, General Statutes § 20-418 et seq. That statute provides in relevant part at § 20-429(a), that "[n]o home improvement contract shall be valid or enforceable against an owner unless it . . . 6) contains a notice of the owner's cancellation rights in accordance with the provision of Chapter 940 . . . and (8) is entered into by a registered salesman or registered contractor."
The plaintiff admits that on July 1, 1994 she entered into a written agreement with Christopher O'Connor, Inc. for the renovation of her house at 30 Pleasant Hill Road in Woodbridge. She further admits that on the same date she entered into a contract with Christopher O'Connor personally to guarantee that Christopher O'Connor, Inc., would perform its obligations under the contract. That contract provides for arbitration of disputes, and the defendants seek to proceed with arbitration of their claim for payment. The plaintiff seeks to enjoin the arbitration on the ground that the contract is unenforceable and that the contractual agreement to arbitrate disputes is likewise unenforceable, because the defendants failed to include a notice of cancellation rights in the contract and because they were not registered home improvement CT Page 4618 contractors at the time the contract was entered into.
A party seeking temporary injunctive relief must establish a reasonable degree of probability that she will ultimately succeed on the merits of her claim and that denial of said relief may result in greater harm to the plaintiff than will result to the defendant from granting relief. Griffin Hospital v. Commission onHospitals and Health Care, 196 Conn. 451, 457 (1985), citing Olcottv. Pendleton, 128 Conn. 292, 295 (1941).
This court makes the following findings. In the weeks before July 1, 1994, the plaintiff contacted Christopher O'Connor, a contractor, to discuss renovations to 30 Pleasant Hill Road in Woodbridge. While the plaintiff indicated that she hoped to sell that home after building another home, the court finds that 30 Pleasant Hill Road was her residence at all relevant times. The plaintiff is a graduate of the Yale School of Architecture, and she was having several kinds of renovations performed at her home at the same time as the roofing and carpentry work for which she hired the defendants. Though the defendants seek to characterize her as the general contractor on the project and themselves as subcontractors, the court finds that the plaintiff was the sole owner of the residence, that she separately contracted with various home improvement contractors, and that the defendants were not subcontractors either of the plaintiff or of any other contractor. The plaintiff's close inspection of the progress of the work and her demanding presence throughout its performance did not render her the general contractor but only a very exacting owner.
After completing negotiations as to the desired work, defendant O'Connor gave the plaintiff and her husband, Bruce Judelson, a tax attorney, two proposed blank contract forms.
Attorney Judelson favored a form headed "Abbreviated Form of Agreement Between Owner and Contractor" prepared by the American Institute of Architects, and he filled in the terms of the contract, including the price, the payments schedule, the dates of commencement and completion, and the scope of the work.
Attorney Judelson did not include in the contract which he prepared on behalf of his wife any provision concerning cancellation rights. The court finds, after considering disputed testimony, that defendant O'Connor provided the plaintiff with a form to use which stated her cancellation rights and that she at no time sought to exercise the right to cancel. When the parties met CT Page 4619 to sign the contract, the plaintiff and her husband insisted that the contract be not only with the corporation under which O'Connor operates his business but also with him personally. They reached a compromise such that O'Connor signed the following statement after his signature as president of Christopher O'Connor, Inc.: "[t]he undersigned hereby personally guarantees the full performance of the foregoing agreement by Christopher O'Connor, Inc."
The defendants assert that because of this guarantee of performance, the contract is valid and enforceable if either the corporation or Christopher O'Connor personally was registered as a home improvement contractor. It does not, however, appear that either entity was registered at the time the contract was entered into.
The facts concerning their status or lack of status as registered home improvement contractors are in dispute. An affidavit signed by Mark Schiffrin, Acting Commissioner of Consumer Protection, was admitted into evidence without objection. In it, Commissioner Schiffrin states that a search of the files of the department of consumer protection indicated that Christopher O'Connor, Inc. held a home improvement contractor's certificate of registration from February 15, 1990 through August 1, 1991 and that this certification was again requested in November 8, 1994 for a period that will expire on August 1, 1996. Mr. Schiffrin states in his affidavit that "There was a lapse in this corporation's license during the period August 2, 1991 through November 7, 1994."
The same affiant avers that the department's records reveal that Christopher O'Connor personally held a certificate of registration from "February 12, 1990 through December 1, 1995". Though this statement appears to confirm a continuous period of registration, the next sentence of Mr. Schiffrin's affidavit is as follows: "There was also a lapse in Mr. O'Connor's license during the period December 1, 1993 through October 12, 1994. Therefore, on or about July 1, 1994, Christopher O'Connor and Christopher O'Connor Inc. did not hold home improvement contractors' certificates of registration with the Department of Consumer Protection." (Ex. C)
Defendant Christopher O'Connor testified that he had mislaid the registration application for the calendar year 1994 but that he located it and paid the registration fee in October 1994. He testified to his belief that this late payment rendered him CT Page 4620 registered for a period ending in December 1994, and that he was therefore a registered home improvement contractor at the time he entered into the home improvement contract with the plaintiff in July 1994.
This interpretation does not, however, appear to be consistent either with the registration documents issued by the department of consumer protection or the statement of the acting commissioner, set forth above. The registration certificate for Christopher O'Connor stamped "10/13/94" by the commissioner of consumer protection on its face bears an expiration date of December 1, 1994. That certificate does not set forth an inception date. The court has located no statute or administrative regulation that provides that a home improvement registration is retroactive to an earlier part of the same calendar year in which the contractor pays the registration fee and obtains the registration certificate. Mr. O'Connor conceded that his registration certificate for 1993 bore an expiration date of December 1993. This court therefore concludes that since Mr. O'Connor's 1993 registration was in effect only until December 1993, and since he did not register in 1994 until October, he was not a registered contractor either personally or in the name of his incorporated business on July 1, 1994, when he signed a contract to perform home improvements on behalf of the plaintiff. The retroactivity interpretation urged on the court by O'Connor cannot be adopted because it is at odds with the provisions of General Statutes § 20-427(b), which states that "no person shall . . . offer to make or make any home improvement without having a current certificate of registration under this chapter." See State v. Poirier, 19 Conn. App. 1 (1989).
General Statutes § 20-429(a) precludes validity or enforceability unless a home improvement contract "8) is entered into by a registered salesman or registered contractor". This wording unmistakably indicates that the contractor must be registered at the time of entering into the contract, and not at some later time. Because neither Christopher O'Connor nor Christopher O'Connor, Inc. was registered as a home improvement contractor at the time the contract with the plaintiff was entered into, this court must conclude that the clear words of the statute preclude the enforcement of the contract, including its provision for arbitration of disputes concerning performance.
The Connecticut Supreme Court has observed, as this court does, that the provision of § 20-429(c) "may lead to a harsh result where a contractor in good faith but in ignorance of the law CT Page 4621 performs valuable home improvements without complying with § 20-429."Barrett Builders v. Miller, 215 Conn. 316, 326 (1990).
In Habetz v. Condon, 224 Conn. 231, 239 n. 12 (1992) the Supreme Court noted that the legislature had failed to take any action to change the harsh results of application of the strict requirements of § 20-429(a):
 The absence of any such legislative reaction to the Barrett Builders line of cases is noteworthy. Where this court interprets a statute and the legislature fails to take action to change that interpretation, it raises the presumption that the legislature has acquiesced in that interpretation. Ralston Purina Co. v. Board of Tax Review, 203 Conn. 425, 439, 525 A.2d 91 (1987); 2A J. Sutherland, Statutory Construction (4th ed. Sands 1984 Rev.) § 45.10.
To this day, the General Assembly has not revised § 20-429(a) to avoid the harsh result of unenforceability in the absence of compliance with all eight of the requirements stated in that statute
The only exception recognized by the Connecticut Supreme Court since Barrett Builders is an exception for bad faith, defined as "actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or contractual obligation, not prompted by an honest mistake as to one's right or duties, but by some interested or sinister motive."Wadia Enterprises, Inc. v. Hirschfeld, 224 Conn. 240, 248 (1992). Invocation of the requirements of § 20-429(a) when a dispute arises, without a showing that the homeowner created the deficiency in the contract, was held in Wadia not to constitute bad faith. That is the situation in this case.
No evidence was presented to this court to support a finding that the plaintiff was in any way involved in the defendants' failure to maintain their status as registered home improvement contractors at the time of the contract at issue, and there is therefore no basis for finding that the only recognized exception to the statute applies.
The defendants have not argued that the plaintiff in any way waived the requirements of § 20-429(a), and they could not CT Page 4622 effectively make that claim since the record is devoid of evidence that the plaintiff was aware of the requirements of the Home Improvement Act at the time she entered into the contract. SeeWadia Enterprises, Inc. v. Hirschfeld, 224 Conn. 240, 251-52
(1992).
Since neither the legislature nor the Supreme Court has acted to alter legal provisions that may lead to manifestly unfair results, this court is driven to a conclusion that may appear unjust. See the dissents on Barrett Builders v. Miller, 215 Conn. 316,333; A. Secondino Son, Inc. v. LoRicco, 215 Conn. 336, 344
(1990).
Under the existing state of the law, this court must find that the plaintiff has demonstrated a high degree of likelihood of success on the merits of her claim that the written contract is unenforceable pursuant to § 20-429(a). Since the duty to arbitrate is a duty created only by that contract, the plaintiff has likewise demonstrated to the requisite degree that this requirement cannot be enforced because a contract entered into by an unregistered home improvement contractor is unenforceable.
The court finds that the harm to the plaintiff from participating in an arbitration proceeding compelled by a contract that is unenforceable is far greater than the harm to the defendants from not undergoing arbitration.
The application for temporary injunction is granted, and the defendants are hereby enjoined from proceeding with arbitration of any dispute with the plaintiff arising from the July 1, 1994 contract.
Beverly J. Hodgson Judge of the Superior Court