STATE OF CONNECTICUT *v.* DARREN JONES
(AC 17123)

Foti, Hennessy and Sullivan, Js.

Argued September 14—officially released December 1, 1998

*David A. Golas*, with whom was *David A. Golas II*, for the appellant (defendant).

*John A. East III*, assistant state's attorney, with whom, on the brief, were *Patricia A. Swords*, state's attorney, and *Nina N. Rosen*, assistant state's attorney, for the appellee (state).

*Opinion*

SULLIVAN, J. The defendant appeals from a judgment of conviction, rendered after a trial by jury, of operating a motor vehicle while under the influence of intoxicating liquor in violation of General Statutes § 14-227a (a) (1) and (2),[1] possession of drug paraphernalia in violation of General Statutes § 21a-267 (a),[2] possession of a controlled substance in violation of General Statutes § 21a-279 (c)[3] and speeding in violation of General Stat-

[1] General Statutes § 14-227a (a) provides: "No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if he operates a motor vehicle on a public highway of this state or on any road of a district organized under the provisions of chapter 105, a purpose of which is the construction and maintenance of roads and sidewalks, or on any private road on which a speed limit has been established in accordance with the provisions of section 14-218a, or in any parking area for ten or more cars or on any school property (1) while under the influence of intoxicating liquor or any drug or both or (2) while the ratio of alcohol in the blood of such person is ten-hundredths of one per cent or more of alcohol, by weight."

[2] General Statutes § 21a-267 (a) provides: "No person shall use or possess with intent to use drug paraphernalia, as defined in subdivision (20) of section 21a-240, to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain or conceal, or to inject, ingest, inhale or otherwise introduce into the human body, any controlled substance as defined in subdivision (9) of section 21a-240. Any person who violates any provision of this subsection shall be guilty of a class C misdemeanor."

[3] General Statutes § 21a-279 (c) provides: "Any person who possesses or has under his control any quantity of any controlled substance other than a narcotic substance, or a hallucinogenic substance other than marijuana or who possesses or has under his control less than four ounces of a cannabis-type substance, except as authorized in this chapter, for a first offense, may be fined not more than one thousand dollars or be imprisoned not more than one year, or be both fined and imprisoned; and for a subsequent offense, may be fined not more than three thousand dollars or be imprisoned not more than five years, or be both fined and imprisoned."

utes § 14-219 (c).[4] On appeal, the defendant claims that the trial court improperly (1) refused to dismiss a venireperson for cause, (2) admitted the results of the defendant's urinalyses into evidence, (3) construed the drug paraphernalia statute to include pipes without screens and (4) denied the defendant's application for community service. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. At approximately 2:23 a.m. on August 5, 1995, Lieutenant Ronald Doughty of the Coventry police department observed a pickup truck driving through the town of Coventry at a high rate of speed. Doughty pursued the truck with the intent to pull it over as soon as the hilly, curved road straightened out. As he followed the vehicle through a thirty-five mile per hour zone, he determined its speed to be seventy miles per hour. He also observed the truck weaving in its lane.

When Doughty pulled the truck over, he found the defendant at the wheel and smelled a strong odor of alcohol. Doughty observed that the defendant's eyes were red and glassy, and that he appeared to be confused. The defendant admitted to having consumed "three beers." The defendant failed several standard roadside sobriety tests, including the horizontal gaze nystagmus test, the walk and turn test, and the one-legged stand test. On the basis of those tests and his

---

[4] General Statutes § 14-219 (c) provides: "Any person who violates any provision of subdivision (1) of subsection (a) of this section or who operates a motor vehicle (1) on a multiple lane, limited access highway at a rate of speed greater than seventy miles per hour but not greater than eighty-five miles per hour or (2) on any other highway at a rate of speed greater than sixty miles per hour but not greater than eighty-five miles per hour shall be fined not less than one hundred dollars nor more than one hundred fifty dollars, provided any such person operating a truck, as defined in section 14-260n, shall be fined not less than one hundred fifty dollars nor more than two hundred dollars."

observations, Doughty concluded that the defendant was intoxicated and arrested him.

A search incident to the arrest yielded a wooden pipe on the defendant's person, which was later tested and found to contain marijuana residue.[5] At the police station, the defendant consented to providing the police with two urine samples. The samples were taken thirty-four minutes apart. Both tests revealed a blood alcohol content exceeding the legal limit for operating a motor vehicle.

## I

The defendant first claims that the trial court violated his state and federal constitutional rights to trial by an impartial jury by refusing to remove a venireperson, T, for cause. We disagree.

Some additional facts are necessary to our resolution of this issue. During voir dire examination, T stated that there was a history of alcoholism in her husband's family. Specifically, twenty years prior, T's father-in-law was involved in an automobile accident while driving drunk. Also, her brother-in-law committed suicide while drunk. She said that these incidents made her "conservative" with respect to drinking and driving, and that she would not be the kind of person that she would pick to sit on a jury if she were the defendant. Nonetheless, she affirmed that she could be fair and impartial, and render a verdict based on the evidence and according to the judge's instructions.

After the venireperson left the courtroom, the defendant asked the court to remove her for cause. Refusing to excuse T for cause, the court found that she would be fair and impartial despite her husband's family history.[6]

---

[5] The police conducted a field test of the pipe. The state toxicology laboratory confirmed the presence of marijuana with three tests: enzyme multiplied immunoassay technique, gas chromatography and mass spectrometry.

[6] "The Court: She certainly said she could be. She wasn't even equivocal about it. She said she would. . . . The fact that she may be conservative

"Jury impartiality is a core requirement of the right to trial by jury guaranteed by the constitution of Connecticut, article first, § 8, and by the sixth amendment to the United States constitution. . . . The modern jury is regarded as an institution in our justice system that determines the case solely on the basis of the evidence and arguments given [it] in the adversary arena after proper instructions on the law by the court." (Internal quotation marks omitted.) *State* v. *Santiago*, 245 Conn. 301, 330, 715 A.2d 1 (1998).

The integrity of our criminal justice system relies on a fair and impartial jury. "[A]n impartial and fairly chosen jury is the cornerstone of our criminal justice system." (Internal quotation marks omitted.) *Eisenbach* v. *Downey*, 45 Conn. App. 165, 172, 694 A.2d 1376, cert. denied, 241 Conn. 926, 696 A.2d 1264 (1997). To this end, the

about the issue is basically telling us that she's a law-abiding person. I think most people would say, if you asked them, that they approve of the law that says you shouldn't drink and drive a motor vehicle after you've been under the influence. I don't think that's—every citizen would probably say that, everybody that comes through here would say that, and I don't think that the fact that she has those experiences, unless those experiences make us think that she can't be fair or impartial, but it's just the opposite. She said she has those experiences, but she could be fair and impartial.

"[Defense Counsel]: I think by implication she told us that she can't, she wouldn't choose herself, and based on those experiences. I mean, true, a lot of people come here with conservative attitudes with respect to alcohol and drugs, and there isn't any problem whatsoever with that, but not everybody comes here with a father-in-law who was involved in a drunken driving accident and a brother-in-law who committed suicide while drinking. I mean, I think that's a rarity with respect to personal experiences, and I think those are pretty heavy personal experiences, and here's a case that involves exactly that. I mean it involves the allegation of driving while under the influence of alcohol. So, I just think that by implication when she answered that question she wouldn't choose herself, she's telling us that.

"The Court: Well, I think what she meant when she said that was she said she's conservative. She would probably rather have somebody more liberal than she on the jury to make that determination, but she didn't say she wouldn't—that she would be unfair at all. She said just the opposite. She would be fair. She'd listen to the case, she would follow the judge's instructions. I'm going to decline your request to excuse her."

common law allows parties to challenge the seating of a juror peremptorily or for cause. Having exhausted his peremptory challenges, the defendant raised a challenge for cause.

The challenge for cause exists in two forms, the principal challenge and the challenge to the favor. The principal challenge is based on an inextricably close relation between a prospective juror and a party such that disqualification will be a matter of law. *Morgan* v. *St. Francis Hospital & Medical Center*, 216 Conn. 621, 624, 583 A.2d 630 (1990). A challenge to the favor involves a more remote relationship that tends to show bias but does not create a conclusive presumption. Id. The defendant here raises the latter challenge.

"The trial court is vested with wide discretion in determining the competency of jurors to serve, and that judgment will not be disturbed absent a showing of an abuse of discretion." *State* v. *Cubano*, 203 Conn. 81, 88–89, 523 A.2d 495 (1987). The defendant bears the burden of proving actual bias by showing that the prospective juror's mind was settled and his opinion fixed so as not to be able to judge the defendant's guilt impartially. *Eisenbach* v. *Downey*, supra, 45 Conn. App. 173.

The voir dire examination of T did not establish bias or prejudice on her part. Quite the contrary, T's responses to the voir dire examination indicated that her mind and opinion would be fixed only by the evidence presented at trial and the instructions of the judge. T unambiguously stated that despite her family history, she could and would fairly and impartially judge the defendant's guilt according to the law. The defendant has failed to show that T's general aversion to drinking and driving created any particularized prejudice to him or influenced her ability fairly to weigh the evidence against him.

We conclude that the trial court acted within its broad discretion in refusing to excuse T for cause, the defendant having not established actual bias on her part.

## II

The defendant next claims that the results of his urinalyses should have been excluded because they failed to meet the admissibility requirements of *Frye* v. *United States*, 293 F. 1013 (D.C. Cir. 1923).[7]

"The trial court has wide discretion in its rulings on evidence and its rulings will be reversed only if the court has abused its discretion or an injustice appears to have been done." (Internal quotation marks omitted.) *State* v. *Merritt*, 36 Conn. App. 76, 82, 647 A.2d 1021 (1994), appeal dismissed, 233 Conn. 302, 659 A.2d 706 (1995).

## A

After the trial court denied the motion to suppress the test results, which the defendant based on the tests' alleged failure to meet the statutory requirements for admission of a chemical test, the defendant orally moved to suppress the test results on *Frye* grounds.

The defendant's chief complaint is that the test results are inaccurate and unreliable because he was not allowed to void his bladder prior to giving each urine sample. The state contends that Connecticut's two test requirement alleviates the problem because the first sample effectively serves as a void for the second sample.

---

[7] "Just when a scientific principle or discovery crosses the line between the experimental and demonstrable stages is difficult to define. Somewhere in this twilight zone the evidential force of the principle must be recognized, and while courts will go a long way in admitting expert testimony deduced from a well-recognized scientific principle or discovery, the thing from which the deduction is made must be sufficiently established to have gained general acceptance in the particular field in which it belongs." *Frye* v. *United States*, supra, 293 F. 1014.

Our examination of the record reveals that the trial court's admission of the test results essentially rests on its finding that the state had met the requirements of § 14-227a (c).[8] We have previously noted that "[t]he admissibility of chemical analyses is controlled by General Statutes § 14-227a (c), which lists six factors that

---

[8] General Statutes (Rev. to 1995) § 14-227a (c), as amended by Public Acts 1995, No. 95-257, § 21, provides in relevant part: "[I]n any criminal prosecution for violation of subsection (a) or (b) of this section, evidence respecting the amount of alcohol or drug in the defendant's blood or urine at the time of the alleged offense, as shown by a chemical analysis of the defendant's breath, blood or urine shall be admissible and competent provided: (1) The defendant was afforded a reasonable opportunity to telephone an attorney prior to the performance of the test and consented to the taking of the test upon which such analysis is made; (2) a true copy of the report of the test result was mailed to or personally delivered to the defendant within twenty-four hours or by the end of the next regular business day, after such result was known, whichever is later; (3) the test was performed by or at the direction of a police officer according to methods and with equipment approved by the Department of Public Health and was performed by a person certified or recertified for such purpose by said department or recertified by persons certified as instructors by the Commissioner of Public Health. If a blood test is taken, it shall be on a blood sample taken by a person licensed to practice medicine and surgery in this state, a phlebotomist, a qualified laboratory technician, an emergency medical technician II or a registered nurse; (4) the device used for such test was checked for accuracy immediately before and after such test was performed by a person certified by the Department of Public Health; (5) an additional chemical test of the same type was performed at least thirty minutes after the initial test was performed, provided however the results of the initial test shall not be inadmissible under this subsection if reasonable efforts were made to have such additional test performed in accordance with the conditions set forth in this subsection and such additional test was not performed or was not performed within a reasonable time, or the results of such additional test are not admissible for failure to meet a condition set forth in this subsection; and (6) evidence is presented that the test was commenced within two hours of operation. In any prosecution under this section it shall be a rebuttable presumption that the results of such chemical analysis establish the ratio of alcohol in the blood of the defendant at the time of the alleged offense, except that if the results of the additional test indicate that the ratio of alcohol in the blood of such defendant is twelve-hundredths of one per cent or less of alcohol, by weight, and is higher than the results of the first test, evidence shall be presented that demonstrates that the test results and the analysis thereof accurately indicate the blood alcohol content at the time of the alleged offense."

must be met before such evidence is deemed admissible and competent." *State* v. *Gilbert*, 30 Conn. App. 428, 438–39, 620 A.2d 822 (1993), aff'd, 229 Conn. 228, 640 A.2d 61 (1994). On the basis of the factual allegations, the trial court found that the statutory criteria were met. Because § 14-227a provides the exclusive grounds for admission of chemical analyses, the trial court properly admitted the test results when it determined that those criteria had been met.

### B

Even if § 14-227a were not the only condition for admission, the trial court properly admitted the urinalysis results under the *Frye* "general acceptance" test.[9]

Under the *Frye* test for admissibility, the scientific basis for certain evidence must be "sufficiently established to have gained general acceptance in the particular field in which it belongs." *Frye* v. *United States*, supra, 293 F. 1014.

During a brief *Frye* hearing, the trial court concluded that the defendant's objections went to the weight rather than the admissibility of the evidence and refused to exclude the test results.

The factual determination of whether scientific evidence meets the *Frye* standard is properly the trial court's province. *State* v. *Zollo*, 36 Conn. App. 718, 726, 654 A.2d 359, cert. denied, 234 Conn. 906, 660 A.2d 859 (1995). "Although we will review a trial court's ruling

---

[9] Subsequent to the trial court's evidentiary ruling, our Supreme Court adopted the more liberal approach of *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), for the admissibility of scientific evidence. *State* v. *Porter*, 241 Conn. 57, 66–68, 698 A.2d 739 (1997) (en banc), cert. denied, 523 U.S. 1058, 118 S. Ct. 1384, 140 L. Ed. 2d 645 (1998). As a result, the *Frye* general acceptance test is no longer the sole prerequisite to admissibility but, instead, part of a broader conceptual approach. Id., 75–77.

as to whether a *Frye* finding must be made, we will not conduct an appellate level review of the facts relating to a *Frye* finding." Id.

The facts asserted during the hearing provide adequate support for the trial court's conclusion.

### III

The defendant's third claim is that the trial court improperly denied his motion for judgment of acquittal on the charge of possession of drug paraphernalia and improperly held that the screenless wooden pipe found on his person constituted drug paraphernalia as defined by statute. We disagree.

This issue presents a question of statutory interpretation and is therefore subject to our plenary review. *Davis* v. *Norwich*, 232 Conn. 311, 317, 654 A.2d 1221 (1995).

Incident to a lawful arrest, the police searched the defendant and seized a wooden pipe on his person. Although a trained and experienced police officer indicated that the pipe appeared to be a marijuana "bowl," and although laboratory tests confirmed that the pipe was used to smoke marijuana, the defendant maintains that the pipe falls outside the statutory definition of drug paraphernalia because it lacks a screen. Because the statute explicitly lists only "pipes with screens," the defendant argues that a pipe without a screen is not drug paraphernalia even if that pipe is used to consume drugs.

General Statutes § 21a-240 (20) (A) provides the operative definition, which uses the phrase "pipes with screens."[10] The defendant contends that the statutory

---

[10] General Statutes § 21a-240 (20) (A) provides in relevant part: " 'Drug paraphernalia' refers to equipment, products and materials of any kind which are used, intended for use or designed for use in . . . injecting, ingesting, inhaling or otherwise introducing into the human body, any controlled substance contrary to the provisions of this chapter including, but not limited

definition comprises only those pipes that have screens and excludes all other pipes.

A primary rule of statutory construction is that when the words of a statute are plain and unambiguous they should be given full effect. *American Universal Ins. Co.* v. *DelGreco*, 205 Conn. 178, 193, 530 A.2d 171 (1987). This statute uses expansive words of inclusion. Drug paraphernalia comprises "equipment, products and materials of any kind . . . ." General Statutes § 21a-240 (20) (A). The definition also uses "such as" and "including, but not limited to . . . ." Id. These phrases convey a clear intention that the items listed in the definition do not constitute an exhaustive or exclusive list.

Although "including" has been found to be ambiguous by itself, other language may remove the ambiguity, as in this case. See *State* v. *White*, 204 Conn. 410, 422–23, 528 A.2d 811 (1987). By adding the phrase, "but not limited to," the statute clearly indicates that "including" is meant as a term of expansion.

Several other tenets of statutory construction are instructive here. Courts must give effect to a statute such that its purpose is not frustrated and the results are not absurd. *State* v. *DeFrancesco*, 235 Conn. 426, 437–38, 668 A.2d 348 (1995). The defendant's pipe was used to smoke marijuana. The legislature clearly did

---

to . . . (x) objects used, intended for use or designed for use in ingesting, inhaling, or otherwise introducing marijuana, cocaine, hashish, or hashish oil into the human body, such as: Metal, wooden, acrylic, glass, stone, plastic or ceramic pipes with screens, permanent screens, hashish heads or punctured metal bowls; water pipes; carburetion tubes and devices; smoking and carburetion masks; roach clips: Meaning objects used to hold burning material, such as a marijuana cigarette, that has become too small or too short to be held in the hand; miniature cocaine spoons, and cocaine vials; chamber pipes; carburetor pipes; electric pipes; air-driven pipes; chillums; bongs or ice pipes or chillers . . . ."

not intend that a possessor of a marijuana pipe be able to escape liability by merely removing a screen, which does not apparently affect its use in any way. It simply makes no sense that the legislature would outlaw a pipe with a screen but not a screenless pipe unless the screen was essential to the pipe. No one here has suggested that the absence of a screen renders a pipe ineffective for smoking marijuana.

The doctrine of ejusdem generis also supports the trial court's determination. "According to this doctrine, unless a contrary intent appears, where general terms are followed by specific terms in a statute, the general terms will be construed to embrace things of the same general kind or character as those specifically enumerated." (Internal quotation marks omitted.) Id., 438. A wooden pipe used for smoking marijuana most certainly falls within the same class as the other listed items.

The trial court properly found the defendant's pipe to be within the purview of the statute. We find no merit in the defendant's claim.

IV

The defendant's last claim is that the trial court improperly denied his application to participate in a community service program.

Several additional facts are necessary to understand our disposition of this issue. On February 7, 1997, the state filed an amended information charging the defendant with the additional charge of possession of a controlled substance. On February 13, 1997, the defendant moved to strike the added count of the information on the grounds of prejudice. The court denied the motion to strike. The prosecution offered its toxicology report on February 14, 1993. On February 21, 1997, after the evidentiary phase of the trial had closed, the defendant applied for the community service order.

General Statutes § 53a-39c[11] establishes a community service program for persons charged with violations of § 21a-279. Applications for this program are left to the discretion of the trial court. We review the trial court's decision under an abuse of discretion standard, and we conclude that the trial court did act within its discretion.

The defendant's application was made after the evidence had been heard and after the trial was nearly complete. Although the defendant's timing does not automatically disqualify him from participation in the program, it does provide the trial court with ample justification for denying his application. The language

---

[11] General Statutes § 53a-39c provides in relevant part: "(a) There is established, within available appropriations, a community service labor program for persons charged with a violation of section 21a-279 who have not previously been convicted of a violation of section 21a-277, 21a-278 or 21a-279. Upon application by any such person for participation in such program the court may grant such application and (1) if such person has not previously been placed in the community service labor program, the court may either suspend prosecution and place such person in such program or, upon a plea of guilty without trial where a term of imprisonment is part of a stated plea agreement, suspend any sentence of imprisonment and make participation in such program a condition of probation or conditional discharge in accordance with section 53a-30; or (2) if such person has previously been placed in such program, the court may, upon a plea of guilty without trial where a term of imprisonment is part of a stated plea agreement, suspend any sentence of imprisonment and make participation in such program a condition of probation or conditional discharge in accordance with said section 53a-30. No person may be placed in such program who has twice previously been placed in such program.

"(b) Any person for whom prosecution is suspended and who is placed in the community service labor program pursuant to subsection (a) of this section shall agree to the tolling of the statute of limitations with respect to such crime and to a waiver of his right to a speedy trial. If such person satisfactorily completes the program of community service labor to which he was assigned, he may apply for dismissal of the charges against him and the court, on reviewing the record of his participation in such program and on finding such satisfactory completion, shall dismiss the charges. If the program provider certifies to the court that such person did not successfully complete the program of community service labor to which he was assigned or is no longer amenable to participation in such program, the court shall enter a plea of not guilty for such person and immediately place the case on the trial list. . . ."

of the statute makes clear that the community service program is intended to avoid unnecessary trials and expenditures of resources. The trial court, having found that all parties had made a substantial investment in the trial, acted well within its discretion in denying the defendant's application.

The judgment is affirmed.

In this opinion the other judges concurred.