[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE PLAINTIFF'S APPLICATION FOR ORDER TO PROCEED WITH ARBITRATION
This action concerns an arbitration provision (the "arbitration clause") in the partnership agreement creating Columbus Square Associates between the plaintiff and Terry-Pat Associates, which was itself a general partnership owned equally by the two defendants, Basile and D'Amato. Ficca has brought this action to compel Basile and D'Amato to proceed with arbitration. Ficca's Application for Order to Proceed with Arbitration alleges that because of losses sustained by Columbus Square Associates he is entitled to recover more than $460,000 from the defendants. The defendants in turn have interposed a statute of limitations CT Page 3026 defense to the requested arbitration on the grounds that partnership agreement and any agreement to arbitrate contained therein are no longer enforceable due to the passage of time.[1]
The parties disagree as to which body — the court or arbitrator — is the proper forum to decide whether the statute of limitations defense is arbitrable. They further disagree about which body should decide the merits of that defense. While the plaintiff maintains that any such defense must be presented during the arbitration proceeding, the defendants maintain that the court should decide the statute of limitations defense before requiring arbitration. For the reasons stated below, the court decides that the forum question — who decides — is a judicial decision, but that the defense itself must be presented and decided during arbitration. Accordingly, the court grants the plaintiffs application and orders the defendants to proceed with arbitration.
There are no material facts in dispute between the parties that would affect the court's decision. The defendant Basile has admitted the essential factual allegations pleaded by the plaintiffs application for arbitration. While the defendant D'Amato has not formally admitted the allegations of the application, he has not disputed them and has made the same arguments as his co-defendant that the statute of limitations bars arbitration.
"Arbitration is the voluntary submission by the interested parties, of an existing or future dispute to a disinterested person or persons for final determination." Gores v. Rosenthal,150 Conn. 554, 557, 192 A.2d 210 (1963).
 The duty to arbitrate may be created by contract or by statute. . . . In the absence of a contrary statute, [t]he obligations and rights of the parties are described and limited by their written agreement. . . . Parties who have contracted to arbitrate certain matters have no obligation to arbitrate any matters other than those which they have agreed to arbitrate. . . . Except when mandated by statute, a court may not compel parties to arbitrate matters other than those which they have agreed to arbitrate. . . . Whether a particular dispute is arbitrable is a question for the court, unless, by appropriate language, the parties have agreed to arbitrate that question, also. CT Page 3027
(Citations omitted; internal quotation marks omitted.) SecurityIns. Co. of Hartford v. Delaurentis, 202 Conn. 178. 182-183,520 A.2d 202 (1987).
I — The Forum Question
The first question to resolve in the present case is the so-called "forum issue" — which body, court or arbitrator, should decide whether the statute of limitations defense must be submitted to arbitration.
 The first [issue] is whether the arbitration clause entrusts to an arbitrator, or to a court, the authority to decide which forum will determine the arbitrability of the defenses. For purposes of clarity, that issue is hereinafter sometimes referred to as the "forum question." Once the forum question has been answered with a designation of either the court or an arbitrator as the appropriate forum to decide the arbitrability of the defenses, the designated forum must then perform that duty. Stated differently, a determination of the merits of the defenses must be deferred until both of the following steps have been taken:
 1. This court has designated either itself or an arbitration proceeding as the forum in which the arbitrability of the defenses will be decided; and
 2. The designated forum decides whether the defenses are arbitrable under the arbitration clause and thereupon designates either an arbitration proceeding or a court as the authority to decide the merits of the defenses.
Carlin, Pozzi Architects v. Town of Bethel, judicial district of New Haven at Meriden, Docket
No. 265945 (Feb. 26, 1999, Levine, J.) (24 Conn. L. Rptr. 539).
Whether a dispute is arbitrable is up to court to decide unless parties specifically reserve that issue to arbiter.
 The law in Connecticut is clear. Whether a particular dispute is arbitrable is a question for the court, unless, by appropriate language, the parties have agreed to arbitrate that question, also. . . . Whether the parties intended to submit CT Page 3028 the issue of arbitrability, as well as the merits of a claim, to an arbitrator clearly depends on the parties' intent. Whether the parties intended to arbitrate the issue of arbitrability may be determined from an express provision to that effect or from the use of broad terms. . . . Unless the agreement shows such intent, the determination of the question of arbitrability remains a function of the court."
(Citations omitted; internal quotation marks omitted.). Scinto v.Sosin, 51 Conn. App. 222, 227-228, 721 A.2d 552 (1998), cert. denied, 247 Conn. 963, 724 A.2d 1125 (1999). As the court explained in Carlin, Pozzi Architects v. Town of Bethel:
 [A] court is to decide issues of arbitrability, unless an agreement to arbitrate expresses a contrary intent. In so saying, the Appellate Court [in Scinto v. Sosin] followed the directive of the Supreme Court in Welch Group, Inc. v. Creative Drywall, Inc., 215 Conn. 464 (1990), where the court said, "[w]e conclude that arbitrability, absent the parties' clear agreement to the contrary, is a factual question to be determined by the trial court."
Carlin. Pozzi Architects v. Town of Bethel, supra,24 Conn. L. Rptr. 539.
This court must look to the language of the arbitration agreement to determine whether it reflects any intent of the parties here to submit the issue of arbitrability to arbitration. In the present case, section fourteen of the partnership agreement, captioned "RESOLUTION OF DISPUTES," provides in relevant part that:
 Any dispute whatsoever relating to the interpretation, validity or performance of this Agreement, or any other dispute arising out of this Agreement which cannot be resolved by the parties hereto shall be settled by mediation in accordance with procedures to be agreed upon by the Partners. If mediation is not agreed upon or is not successful, the matter shall be settled by arbitration in the County of Hartford, Connecticut in accordance with the results then prevailing of the American Arbitration Association for commercial disputes, and judgment upon the determination of the arbiters may be entered in any court of competent jurisdiction.
Nothing in this arbitration clause expresses any intent by the CT Page 3029 parties for issues of arbitrability to be decided by an arbitrator. Accordingly, this court holds that, under the arbitration clause, the court, and not an arbitrator, will decide whether the statute of limitation defense is arbitrable.
II
Next the court must decide which forum, court or arbiter, will decide the merits of the statute of limitations defense. Because the courts favor the use of arbitration to settle disputes, the Connecticut Supreme Court has adopted the so-called "positive assurance" test:
 [W]e will defer to this alternative method of dispute resolution if the contractual arbitration provisions fall within the grey area of arbitrability, employing the "positive assurance" test as set out in United Steelworkers of America v. Warrior Gulf Navigation Co., 363 U.S. 574, 582-83 . . . Under this test, "`judicial inquiry. . . must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance. . . . An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance: that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'"
(Emphasis in original; citations omitted.) White v. Kampner,229 Conn. 465, 472-473, 641 A.2d 1381 (1994).
The defendants make three arguments why the court should decide the statute of limitations issue — that the arbitration language itself is too narrow to encompass statute of limitations defenses among the arbitrable issues; that the applicability of the statute of limitations does not fall within the specific categories enumerated in the agreement for arbitration; and that the enforceability of an agreement to arbitrate is a threshold issue for the court to which the statute of limitations defense is applicable.
The language of the arbitration agreement refers the following to arbitration: "Any dispute whatsoever relating to the interpretation, validity or performance of this Agreement, or any other dispute arising out of this Agreement." The defendants make two specific claims about this language. First, they assert that the arbitration portion "is much more specific and much narrower" CT Page 3030 than the language in Carlin where the court referred a statute of limitations defense to arbitration. Carlin. Pozzi Architects v.Town of Bethel, supra, 24 Conn. L. Rptr. 539. In Carlin, the operative arbitration language was as follows:
 All claims, disputes and other matters in question between the parties to this Agreement arising out of or relating to this Agreement or the breach thereof, shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise.
Id. The court held there that the statute of limitations defenses "were arbitrable and must be heard and decided in an arbitration proceeding." Id. "A close reading of the arbitration clause does not permit the court to say, with positive assurance, that issues of the timeliness of filing claims, such as those raised by the defenses, were intended by the parties to be excluded from the scope of their agreement to arbitrate." Id.
The defendants here also argue that since the arbitration language does not specifically refer timeliness defenses to arbitration, the court must apply the doctrine of ejusdem generis
to determine whether a statute of limitations defense fits within those categories of issues that are referred to arbitration. Under this rule of statutory construction, "unless a contrary intent appears, where general terms are followed by specific terms in a statute, the general terms will be construed to embrace things of the same general kind or character as those specifically enumerated." (Internal quotation marks omitted.)State v. Jones, 51 Conn. App. 126, 138, 721 A.2d 903 (1998), cert. denied, 249 Conn. 958, 723 A.2d 814 (1999).[2] Under this theory, one would examine the general term used in the arbitration agreement — "[a]ny dispute" — and the specific terms which follow — "whatsoever relating to theinterpretation, validity or performance of this Agreement, or any other dispute arising out of this Agreement." (Partnership Agreement of the Columbus Square Associates, p. 20.) (Emphasis added.) One would then decide whether a statute of limitations defense is of the same general kind or nature as the specific categories mentioned. Thus, this agreement would not embrace all disputes, only those of the same type as those specifically identified. The defendants assert that application of the statute of limitations does not fit within the specific categories of items enumerated in the agreement, but is a statutory defense CT Page 3031 existing separate and apart from the agreement.
Leaving aside the question whether a doctrine of statutory construction should be applied to an arbitration agreement[3], that doctrine does not preclude arbitration of statute of limitations issues here. In Levine v. Advest. Inc.,244 Conn. 732, 714 A.2d 649 (1998), the court found that arbitration language similar to that here could be construed as referring a statute of limitations question to arbitration. The operative arbitration language in Levine referred to arbitration "except asinconsistent with the [federal securities law] allcontroversies . . . concerning any transaction, or the construction, performance or breach of this or any other agreement. . . ."(Emphasis in original.) Id., 754. Contrary to the defendants' first argument here, the court in Levine held that "[t]he phrase "all controversies . . . concerning . . . construction, performance or breach of this. . . agreement is . . . broad enough to encompass disputes over whether the plaintiffs' claims are timely. . . ." Id. The court also pointed out the lack of "any language explicitly carving out disputes regarding eligibility for arbitration, such as timeliness, for resolution by the courts[,]" Id., an absence also conspicuous in the present case, The court's construction of this language inLevine as encompassing arbitration was the critical factor in its resolution of that case. See id. While Levine also involved interpretation of other contract language and questions of New York and federal law, none of those issues would have arisen at all if the arbitration language itself had not been "susceptible of an interpretation" that timeliness issues should be arbitrated.[4]
The language here, similar to that in Levine, refers the following to arbitration: "Any dispute relating to interpretation, validity or performance of the agreement or any other dispute arising out of the agreement. . ." (Partnership Agreement of the Columbus Square Associates, p. 20.) Such language is equally susceptible of an interpretation that the parties intended timeliness issues to be decided in arbitration. This court therefore rejects the defendants' arguments regarding the language of the arbitration agreement as precluding referral of timeliness issues. The language here is similar enough to that used in Levine, and in Scosin, that this court cannot say with positive assurance that this question is not arbitrable.
The other claim raised by the defendants is that questions of CT Page 3032 the enforceability of an agreement to arbitrate are judicial matters for the court to resolve. In so arguing, the defendants rely on two cases that are not applicable here. The first is Wynnv. Metropolitan Property Casualty Ins., 30 Conn. App. 803,623 A.2d 66 (1993), aff'd per curiam, 228 Conn. 436, 635 A.2d 814
(1994). That case, however, is one of many involving the arbitrability of claims arising from underinsured or uninsured motorist coverage provisions in motor vehicle insurance policies. See, e.g., Bayusik v. Nationwide Mutual Ins. Co., 233 Conn. 474,659 A.2d 1188 (1995); Prudential Prop. Cas. Ins. v.Perez-Henderson, 49 Conn. App. 653, 714 A.2d 1281, cert. denied, 247 Conn. 917, 722 A.2d 807 (1998). Those cases all turn on the legislature's mandate that all coverage questions under such policies must be decided by arbitration if a policy refers to arbitration any such issues.[5] The court in Wynn v.Metropolitan Property Casualty Ins. held that a statute of limitations question is not a coverage issue falling within the parameters of the statute mandating arbitration.[6] This case does not stand for the general proposition, however, that all statute of limitations issues in this state must be referred to the court, or else in Levine v. Advest the court would simply have followed such a procedure.
The other case relied on by the defendants for their argument that "[w]here an agreement is unenforceable, the claimed duty to arbitrate under that contract cannot be enforced" is Judelson v.Christopher O'Connor. Inc., Superior Court, judicial district of New Haven at New Haven, Docket No. 371181, (May 2, 1995, Hodgson,J.) (14 Conn. L. Rptr. 253). In that case, a homeowner sought to enjoin an arbitration of a dispute arising from the renovation of a home on the ground that the contract providing for arbitration was unenforceable. The court held that the home renovation transaction was governed by the Home Improvement Act, General Statutes § 20-418 et. seq., under which a home improvement contract is invalid and unenforceable unless entered into by a registered salesman or registered contractor. Since the contractor there was not registered at the time of the contract, both the contract and its arbitration provision were void and unenforceable.
The Judelson court did cite Wynn for the proposition that enforceability of an agreement to arbitrate a claim is a threshold issue for the court, but as explained above, such a reading expands Wynn far beyond its scope. This court reads theJudelson case as following the general policy of this state, as CT Page 3033 adopted by the legislature and embodied in the Home Improvement Act, to impose rigorous standards on the judicial enforcement of home improvement contracts. Even requiring a homeowner to submit to arbitration in Judelson would have contravened the legislature's intent to protect the public from violations of that act. Thus, in another context, the Supreme Court held inCaulkins v. Petrillo, 200 Conn. 713, 720, 513 A.2d 43 (1986):
 It is apparent that this law was passed for the protection of the public and that the remedial purposes of the statute would be undermined if this court were to permit a contractor to enforce an oral contract on the grounds claimed. For example, if a home improvement contractor could, without a written contract, perform certain work and then allege an oral agreement for precisely the same work alleged to have been fully performed, the purpose and clear intent of § 20-429
would be thwarted. We must presume, in the absence of any indication to the contrary, that the legislature intended the statute to be interpreted exactly as it is written; that is, "[n]o home improvement contract shall be valid unless it is in writing. . . ."
The defendants have raised two types of statute of limitations issues, claiming that the statute of limitations has expired on the underlying partnership agreement and on the agreement to arbitrate. This court holds that, for the reasons stated above, both issues must be referred to and decided in arbitration.
Accordingly, the court grants the plaintiffs application for order to proceed to arbitration and hereby orders both parties to proceed to arbitration in accordance with section fourteen of the partnership agreement attached as Exhibit A to the Application for Order to Proceed with
Arbitration.
SO ORDERED
Stephen F. Frazzini, Judge Superior